**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

**DAVID N. MCDONALD,**

**Plaintiff,**

**vs.** **CIVIL ACTION NO. 5:16-CV-04221**

**NANCY A. BERRYHILL**
**ACTING COMMISSIONER OF**
**SOCIAL SECURITY,**

**Defendant.**

# MEMORANDUM OPINION

This is an action seeking review of the final decision of the Acting Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. Presently pending before the Court are parties' cross-motions for Judgment on the Pleadings. (Document Nos. 19 and 20.) Both parties have consented in writing to a decision by the United States Magistrate Judge. (Document Nos. 3 and 4.)

The Plaintiff, David N. McDonald, hereinafter "Claimant", filed an application for DIB on December 15, 2011 alleging disability since June 30, 2010[1], due to "prostate cancer, pain and complications from car accident, right knee pain, both ankles pain, right arm pain, and joint pain".[2] (Tr. at 213.) Claimant's application was denied initially and upon reconsideration. (Tr. at 76-86, 90-96.) On March 12, 2013, Claimant requested a hearing before an Administrative Law Judge

[1] This is also the date last insured ("DLI"). (Tr. at 24.)
[2] On his form Disability Report – Appeal, submitted on June 6, 2012, Claimant asserted that since his last disability report dated December 22, 2011, "Due to cancer and treatments, I am tired all the time, and short of breath. My hip is bothering me now. Due to fatigue, I take a lot longer to do anything." (Tr. at 255.)

("ALJ"). (Tr. at 97-98.) A hearing was held on September 22, 2014, before the Honorable Anne V. Sprague. (Tr. at 29-55.) The ALJ denied his claim by decision dated October 28, 2014. (Tr. at 17-28.) The ALJ's decision became the final decision of the Commissioner on March 9, 2016 when the Appeals Council denied Claimant's request for review. (Tr. at 1-6.) On May 6, 2016, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Having fully considered the record and the arguments of the parties, the Court hereby **DENIES** Plaintiff's request for judgment on the pleadings (Document No. 19.); **GRANTS** Defendant's request to affirm the decision of the Commissioner (Document No. 20.); **AFFIRMS** the final decision of the Commissioner and **DISMISSES** this action from the docket of the Court.

**Claimant's Background**

On the alleged onset date and DLI, Claimant was 54 years old, defined as a person closely approaching advanced age. 20 C.F.R. § 404.1563(d). He stopped working April 1, 2005 due to his alleged disabling conditions. (Tr. at 213.) Claimant completed was the 10th grade and did not attend special education classes. (Tr. at 214.) His past relevant work included moving furniture for 27 years and then as a laborer in construction for about five years. (Tr. at 204.)

**Standard**

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520. If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. § 404.1520(f). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 404.1520(g). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

**Summary of ALJ's Decision**

In this particular case, the ALJ determined that Claimant last met the insured status requirements ("DLI") on June 30, 2010. (Tr. at 22, Finding No. 1.) Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity during the period from his alleged onset date of June 30, 2010 through the DLI, June 30, 2010. (Id., Finding No. 2.) Under the second inquiry, the ALJ found that through the DLI, there were no medical signs or laboratory

findings to substantiate the existence of a medically determinable impairment. (Id., Finding No. 3.) Accordingly, the ALJ concluded that Claimant was not under a disability at any time from June 30, 2010, the alleged onset date, through June 30, 2010, DLI. (Tr. at 24, Finding No. 4.)

**Claimant's Challenges to the Commissioner's Decision**

Claimant states that the ALJ's decision is not supported by substantial evidence because evidence from Dr. Robert B. Skalloff contradicts the ALJ's finding of no medically determinable impairment on DLI.[3] (Document No. 19 at 3.) Furthermore, none of the evidence relating to Claimant's impairments, severe or not, including the vocational expert's testimony, were reflected in the ALJ's decision, which is reversible error. (Id. at 3-4.) Next, Claimant argues that the ALJ failed to employ the "borderline age" rule where the vocational expert's testimony "seems" to support a finding that Claimant's RFC was at the light exertional level, and therefore based on his age, he should have been determined disabled. (Id. at 5.) Claimant requests remand in order to correct these errors. (Id. at 6.)

In response, the Commissioner points out that the relevant period in this case is one day: June 30, 2010, and there is no medical evidence in the record from this relevant period. (Document No. 20 at 3-4.) Further, the Commissioner contends that Claimant failed to show that he had any medically determinable impairments during the relevant period from an acceptable medical source, therefore the ALJ's finding that he was not disabled is supported by substantial evidence. (Id. at 7.) The Regulations and the Supreme Court determined that Claimant bears this burden of proof at step two of the sequential evaluation process, and his allegations of symptoms are not sufficient by themselves. (Id. at 8.) The Commissioner asserts that contrary to Claimant's assertion that the

[3] Claimant also contends that the ALJ violated 20 C.F.R. § 404.1592(e), however, even a cursory review of the record shows that when the trial work period begins or ends is entirely irrelevant to the issues on appeal. (Document No. 19 at 3.)

vocational expert testimony should have been included in the ALJ's decision, his case was already determined at step two, therefore, the ALJ was not required to proceed to the next steps in the sequential evaluation process. (Id. at 10.) Finally, the Commissioner argues the "borderline age" rule also does not apply for the same reason, because at step two Claimant failed to prove he was disabled. (Id. at 10-11.) The Commissioner requests that the decision be affirmed. (Id. at 11.)

**The Relevant Evidence of Record**[4]

Medical Evidence Pre-Dating Relevant Period:

Claimant was in a car accident on January 17, 2003, in which he sustained a right knee laceration, left shoulder fracture, right forearm fracture, rib fractures, a scalp laceration, a concussion, and a left hip socket fracture with posterior dislocation. (Tr. at 268, 317-318, 322, 324, 325.) The attending physician noted that Claimant was intoxicated. (Tr. at 268, 270.) Claimant was admitted to the hospital where he underwent procedures that included laceration repair; reduction of hip dislocation; application of a right short arm cast; and open reduction and internal fixation of the right ulna and context left acetabulum. (Tr. at 268.) Claimant was discharged from the hospital on January 24, 2003, although he continued to participate in acute inpatient rehabilitation through January 30, 2003. (Tr. at 309-312.)

Claimant presented to the emergency room on July 12, 2005 complaining of left hip pain; he was diagnosed with left hip pain, status post previous pelvic fracture and tendonitis to the left hip. (Tr. at 319, 744.) An x-ray showed the previous acetabular reconstruction and some osteophytic change, the impression was "chronic change." (Tr. at 326, 745.) Claimant returned to the emergency room on October 17, 2005 due to a left thumb laceration. (Tr. at 320.) It was noted

[4] The undersigned focuses on the relevant evidence of record pertaining to the issues on appeal as referenced by the parties in their respective pleadings.

that his blood pressure was elevated, and "quite difficult to control" for which he received Clonidine. (Id.) After his blood pressure stabilized, staff sutured Claimant's thumb and he was given wound care instructions. (Id.) It was noted that Claimant "is a self-employed painter." (Id.)

Between November 2005 and March 2007, Claimant saw Timothy Workman, D.O., for treatment of hip and knee pain and high blood pressure. (Tr. at 328-333.) In April and May 2008, Claimant presented to the Northern Greenbrier Health Clinic for treatment of left foot pain, hip pain, and hypertension. (Tr. at 409-410.) Claimant returned to the clinic in February 2009 for the same complaints. (Tr. at 408.) By March 2009, his blood pressure and left hip/leg pain were doing "better". (Tr. at 407.)

In May 2007, the State agency ordered a consultative examination with Z. Shamma Othman, M.D., in connection with Claimant's second application for disability. (Tr. at 340-342.) Claimant reported residual hip and elbow pain from his 2003 car accident, but he had a normal gait; no difficulty getting on and off the examination table; a negative straight-leg raising test; intact strength; and full range of motion in his neck, lower back, and all upper and lower extremity joints. (Id.) Claimant did not need an assistive device to walk. (Tr. at 342.) Dr. Othman's impression was status post car injury and surgery on the right elbow and left hip with no significant swelling or erythema of the skin. (Id.) Dr. Othman further opined that although there was minimally reduced range of motion in Claimant's left hip, the examination was otherwise unremarkable. (Id.)

Medical Evidence Post-Dating Relevant Period:

On June 15, 2011 Claimant was seen by Charles H. Shelton, III, M.D. on referral from Dr. Kyle Fort for cancer treatment. (Tr. at 359-362.) Dr. Shelton noted Claimant's past medical history

included the motor vehicle accident in 2004, causing pelvic and forearm fracture and "resulting post-traumatic osteoarthritis." (Tr. at 359.) Dr. Shelton further noted that Claimant has "chronic osteoarthritis post-traumatic pain, mostly in the pelvis from his MVA. He is on ibuprofen for this reason." (Tr. at 360.)

By letter dated December 23, 2011, Kyle Fort, M.D., Claimant's urologist, wrote to Claimant's attorney stating that Claimant asked him to estimate when his cancer occurred, but it "is literally impossible" to determine because Claimant was not biopsied and diagnosed until April 22, 2011. (Tr. at 661.) Dr. Fort wrote, "most likely he has had prostate cancer for a few years in order for it to have become so extensive in the prostate, however, that is just a guess and not by any stretch of the imagination within any degree of medical certainty." (Id.) Dr. Fort apologized for not being able to provide an onset date. (Id.)

On April 4, 2012, State agency medical consultant Subhash Gajendragadkar, M.D., reviewed the evidence of record at the initial level of review noting Claimant's allegations of disabling prostate cancer and complications from his earlier car accident, but found that there was no evidence of any medically determinable impairments prior to Claimant's DLI (Tr. at 70-72.) Dr. Gajendragadkar opined Claimant was not disabled (Tr. at 72.)

On January 12, 2013, at the reconsideration level of review, State agency medical consultant Uma Reddy, M.D., reviewed the evidence of record and affirmed Dr. Gajendragadkar's findings and conclusion. (Tr. at 62-64.)

On February 9, 2014, Robert Sklaroff, M.D., a State agency medical expert, reviewed the evidence of record and completed interrogatories at the ALJ's request. (Tr. at 734-737.) The ALJ asked Dr. Sklaroff to identify "the claimant's impairments, if any, established by the evidence"

from his alleged onset date through the present. (Tr. at 735.) Dr. Sklaroff noted that the record established that Claimant had prostate cancer, hypertension, and the "auto accident causing" concussion, multiple fractures, microscopic herniation, tendonitis and arthritis in left hip; Dr. Sklaroff also noted Claimant had been diagnosed with a renal cyst, atherosclerosis, fatty liver, and pyelonephritis. (Id.) He then noted that Claimant's impairments did not meet or medically equal any of the impairments described in the Listing of Impairments. (Tr. at 736.) In so finding, Dr. Sklaroff directed the ALJ to Exhibit 6F (Tr. at 340-344.), Dr. Othman's consultative examination report, which he felt was "DISPOSITIVE (Full Capacity)". (Tr. at 736.) In a medical source statement, Dr. Sklaroff indicated Claimant could perform the exertional demands of medium work. (Tr. at 738-739.) The form indicated that Dr. Sklaroff's opinion should reflect his opinion regarding current limitations only. (Tr. at 743.) Dr. Sklaroff did not give an opinion regarding any past limitations. (Id.)

**The Administrative Hearing**[5]

Claimant Testimony:

Claimant testified that after his prostate cancer surgery, he received shots that lasted two or three years, every six months, but this did not prevent him from working, it "was my back, my hip, my arm." (Tr. at 36-37.) He did not work after 2005 because of his hip and back. (Tr. at 37, 42.) Claimant testified that he had his hip replaced in 2014. (Tr. at 37.) He testified that he cannot work currently because of his lower back, his arm stiffens up on him occasionally, and he has to rush to the bathroom, and he cannot sit or stand too long. (Tr. at 38-39.)

[5] The undersigned focused on the testimonial evidence pertaining to the alleged onset date and DLI, June 30, 2010. Claimant and his attorney recognized that proof of disability had to be shown prior to June 30, 2010. (Tr. at 31, 41.)

During June 2010, Claimant testified that he spent his time mostly at home or his friends would come and take him for a little ride. (Tr. at 40.) Claimant does not drive because he lost his license in 2004 from the accident due to DUI. (Tr. at 41.) Claimant stated that he applied for Social Security several times, in 2003, 2007, and 2010 based on the motor vehicle accident, but he never appealed the adverse decisions because he interpreted his being "ineligible" that he could still work. (Tr. at 40-41.) Claimant stated that he attempted to go back to work for about two weeks, but he could not do the job. (Tr. at 41.) Claimant testified that his hip pain from the auto accident in 2003 became worse over the years. (Tr. at 48.) The pain in his hip was became unbearable in 2005 that he had to quit working in construction. (Tr. at 49.) Claimant testified that he cannot bend down anymore to finish concrete or use his right arm, and also as a result of his accident, his hand cramps up painfully. (Tr. at 50-51.)

When he was still working, Claimant stated he gave money to his sister, girlfriend or aunt who would then use it to pay the bills because he cannot read. (Tr. at 46, 47.) Claimant admitted that no doctor has told him that he cannot work. (Tr. at 39.)

Vocational Expert ("VE") Testimony:

The VE characterized Claimant's past work as a furniture mover as very heavy, semi-skilled, and his past work as a construction laborer as very heavy, unskilled. (Tr. at 51.) The VE testified that there were no transferable skills. (Tr. at 52.) Assuming a hypothetical individual of Claimant's age, education, and past work, able to lift and carry no more than 10 pounds occasionally and 25 pounds frequently, stand and walk no more than six hours in an eight-hour day, sit no more than six hours in an eight-hour day, the VE opined such an individual could not perform past work. (Id.) However, the VE testified that the individual could perform medium, unskilled work, such as hand packager, motor vehicle assembler, and dishwasher. (Id.)

**Scope of Review**

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence however, the Court determines if the final decision of the Commissioner is based upon an appropriate application of the law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Further, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." Blalock, 483 F.2d at 775.

**Analysis**

In this case, the ALJ expressly found that there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment through the DLI. (Tr. at 22.) The ALJ noted Claimant testified that prior to July 2010 he was fatigued and had shortness of breath because of prostate cancer, that is now in remission. (Tr. at 23.) She also noted his limitations due to his hip, arm and lower back issues. (Id.) Evidence prior to July 1, 2010 reflected Claimant's motor vehicle accident on January 17, 2003 wherein he sustained right knee laceration, left scapular fracture, right ulna fracture, rib fractures, scalp laceration, concussion, and left acetabular fracture

with posterior dislocation. (Id.) After his discharge on January 24, 2003 and rehabilitation through January 30, 2003, the ALJ acknowledged Claimant had earnings totaling $9,350.00 in 2004 indicating "he was able to work for a significant period of time." (Id.) Other pre-July 1, 2010 evidence included Dr. Othman's consultative examination wherein the ALJ acknowledged Dr. Othman found Claimant's physical exam " 'unremarkable' apart from 'minimal limitation noted on musculoskeletal examination of the left hip.' " (Id.) In addition, the ALJ noted on February 9, 2014 Dr. Sklaroff responded to interrogatories in which he opined that Claimant had " 'full capacity' " and that he could "perform work at the medium level of exertion." (Tr. at 23-24.) Notably, the ALJ acknowledged that Dr. Sklaroff's opinion pertained only to Claimant's "current limitation", and had insufficient information "to form an opinion concerning any limitations that the claimant may have had in the past." (Tr. at 24.)

The ALJ gave "great weight" to the "consistent" and "well-supported opinions" from the State agency medical consultants, Drs. Gajendragadkar and Reddy, both of whom found "that there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment through the [DLI]." (Id.) The ALJ acknowledged that after June 30, 2010, DLI, Claimant used a colostomy bag for six months and had a total hip replacement, noting that both conditions were not present prior to July 1, 2010. (Id.)

Pursuant to 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability *unless he furnishes* such medical and other evidence of the existence thereof as the Commissioner of Social Security may require") (emphasis added). The burden lies with the claimant because he is "in a better position to provide information about his own . . . condition." Bowen v. Yuckert, 482 U.S. 137, 147 n.5 (1987); 20 C.F.R. § 404.1512(a). Claimant argues that

Dr. Sklaroff's interrogatory responses prove that he had medically determinable impairments as of June 30, 2010. Assuming *arguendo* that Dr. Sklaroff's responses suggested Claimant had medically determinable impairments as of June 30, 2010, of importance here is that Dr. Sklaroff did not opine that his impairments were "severe", therefore, the sequential evaluation process would have ceased at the second step. See 20 C.F.R § 404.1520(a)(4)(ii). More importantly, Dr. Sklaroff opined that Claimant was not disabled. As stated previously, if an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 404.1520(a).

Moreover, Claimant's contention that the "borderline age rule" would have directed a finding that he was disabled had the rule been applied is also inapposite here: The Regulations provide that:

> We will not apply the age categories mechanically in a borderline situation. If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case.

20 C.F.R. § 404.1563(b). An individual's age used as a vocational factor does not come into play unless the ALJ determines an individual is considered disabled under Section 404.1520(g)(1). See, § 404.1520(a). Because Claimant had not been determined to have severe impairments at step two of the sequential evaluation process, Claimant's contention that the ALJ committed reversible error at step five is inconsequential.

Although Claimant suggests the VE "seems" to advocate a light RFC that the Medical-Vocational Guidelines would direct a finding of disabled, the VE's testimony actually confirmed an RFC to medium exertional work. (Document No. 19 at 5.) However, even if the ALJ had a duty

to apply the Guidelines, Rules 203.18 and 203.11 still dictate a finding of "not disabled."[6] Accordingly, the undersigned **FINDS** the ALJ committed no error in finding Claimant was not disabled.

After a careful consideration of the evidence of record, the Court **FINDS** that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Judgment on the Pleadings (Document No. 19.) is **DENIED**, the Defendant's Motion for Judgment on the Pleadings (Document No. 20.) is **GRANTED**, the final decision of the Commissioner is **AFFIRMED** and this matter is hereby **DISMISSED** from the docket of this Court.

The Clerk of this Court is directed to provide copies of this Order to all counsel of record.

ENTER: April 3, 2017.

Omar J. Aboulhosn
United States Magistrate Judge

[6] Rule 203.11 pertains to individuals of advanced age with a limited or less education and previous work experience of the unskilled category where the RFC limitation is to medium work; Rule 203.18 pertains to individuals of closely approaching advanced age with a limited or less education and previous work experience of the unskilled or none category where the RFC limitation is to medium work.